UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL CORDERO, | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   Civil Action No. 18-30031-MGM |
| TROOPER NOAH PACK, MA State Police, | * |
| In his personal and professional capacity, et al., | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND
(Dkt. Nos. 24, 37, 39, and 44)

March 19, 2019

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff, acting pro se, filed his complaint on February 20, 2018, asserting claims under 42 U.S.C. § 1983 and for the torts of false imprisonment, battery, trespass to chattel, negligence, and negligence for failure to adequately train against the Pittsfield Police, the City of Pittsfield, the Massachusetts State Police, the Commonwealth of Massachusetts, and ten members of either the Massachusetts State Police or the Pittsfield Police (including two unnamed individuals), all sued in their individual and official capacities. With respect to all claims and all defendants, Plaintiff seeks monetary damages, both compensatory and punitive. Plaintiff's claims stem from his detention following a routine traffic stop on the evening of February 19, 2015 in Pittsfield, Massachusetts. In the course of his detention, illegal drugs were found in his vehicle and he was charged in state court with various drug-trafficking crimes. A superior court judge denied Plaintiff's motion to suppress the evidence obtained the evening of the traffic stop. On interlocutory appeal, the Massachusetts Supreme Judicial Court ("SJC") reversed, ruling that officers did not have reasonable suspicion of

criminal activity at the time they completed their investigation of civil traffic violations, did not have a legitimate basis to detain Plaintiff past that point, and all evidence seized thereafter must be suppressed. *Commonwealth v. Cordero*, 74 N.E. 3d 1282 (Mass. 2017) (hereinafter "*Cordero*" or "the SJC opinion").

Defendants have filed three separate motions to dismiss, one on behalf of Chief Wynn, Officer Steven Haecker, the Pittsfield Police Department, and the City of Pittsfield (Dkt. No. 24); one on behalf of Colonel Kerry Gilpin, Major Michael Habel, the Massachusetts State Police, and the Commonwealth of Massachusetts (Dkt. No. 37); and one on behalf of Trooper David Buell (Dkt. No. 39). Trooper Noah Pack has filed an answer and jury demand. (Dkt. No. 53). Plaintiff has filed a single opposition to all pending motions and has moved to file an amended complaint to provide more detail to support his claims related to inadequate training. (Dkt. No. 44). The defendants who have moved to dismiss have also opposed Plaintiff's Motion to Amend. (Dkt. Nos. 45, 46, & 47.)

II. SPECIAL CONSIDERATIONS APPLICABLE TO COMPLAINTS FILED BY PRO SE PLAINTIFFS[1]

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties pro se plaintiffs face, the courts construe pro se complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st

---

[1] In preparing his complaint, Plaintiff indicates he was assisted by an attorney; however, as he is proceeding without counsel, his complaint is treated as a pro se filing.

Cir. 1988)). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004).

### III. MOTION TO DISMISS STANDARD

At this stage in the litigation, the court accepts as true the factual allegations—those setting out who did or said what, to whom, and when—contained in the complaint, or, in this case, the SJC's opinion, and draws all reasonable inferences based on those factual allegations. *Evergreen Partnering Grp, Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "As a general proposition, a complaint must contain no more than 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)). However, this simple formulation obscures the full weight of the burden that falls on plaintiffs seeking to show that they are entitled to relief. Plaintiff's "short and plain" statement must state the plaintiff's claims and the facts on which they are based clearly enough to allow the defendant to mount a defense. *Díaz-Rivera*, 377 F.3d at 123. The court may consider additional facts, but only in narrow circumstances, such as facts contained in documents of undisputed authenticity and sufficiently central to claims in the complaint. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. This means the complaint must identify a legal basis for imposing liability on a defendant based on the alleged conduct and contain sufficiently specific factual content from which

the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the court credits factual allegations, but not conclusory statements.

IV. COMPLAINT AND PROPOSED AMENDED COMPLAINT

**A.     Complaint**

Plaintiff's complaint alleges that he was subjected to a traffic stop on the evening of February 19, 2015 during which, as the SJC later ruled, his rights under the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights were violated. Specifically, the SJC wrote that the state and local law enforcement officers present at the stop detained Plaintiff for longer than was required to complete the traffic stop. *Cordero*, 74 N.E.3d at 1292. Plaintiff alleges the officers acted pursuant to "a policy implemented by the Pittsfield Police Department and the Massachusetts state police [sic] to pull over suspects for minor traffic violations when their real purpose is to monitor felonious drug and other criminal activity" and that the "pretextual pullovers often involve searches that violate the constitution." (Dkt. No. 1, Compl., 2.) With respect to the individual defendants who are supervisors, and presumably were not present on February 19, 2015, Plaintiff states that he is suing them based on their failure to train. (*Id.*) Within the body of his complaint, Plaintiff does not identify which of the officers he has named as defendants are supervisors and which were present at the traffic stop. In the caption he identifies Colonel Kerry Gilpin ("Gilpin") as the Superintendent of the Massachusetts State Police, Major Michael Habel ("Habel") as a Troop Commander, and Lieutenant David Buell ("Buell") as Station Commander of the Lee Barracks of the Massachusetts State Police.

In *Cordero*, the SJC provided a detailed description of the actions of Trooper Noah Pack ("Pack"), the officer who made the initial traffic stop and summarized the actions of two unnamed

4

officers: a second Massachusetts State Trooper and a Pittsfield Police Officer. *Cordero*, 74 N.E.3d at 1285-87. Both unnamed officers arrived at the traffic stop after Pack. *Id.* at 1286-87. The Pittsfield Police Officer, Steven Haecker ("Haecker") is described by the SJC as arriving on the scene after the routine traffic stop had been completed. *Id.* at 1287. At that time, Plaintiff had been patfrisked, "handcuffed and placed in the back of [a state police] cruiser," though he had not been arrested and his vehicle had not yet been searched. *Id.* The SJC stated the Pittsfield officer asked three different times for Plaintiff's consent to a search of his vehicle before, "according to the officer, [Plaintiff] 'gave consent for it,'" and the vehicle was searched. *Id.* Plaintiff supplements the facts set forth in *Cordero*, disputing Haecker's statement and asserting he never consented to the search. He asserts the search was unconstitutional for that reason, as well as being unconstitutional for the reasons given by the SJC.

**B.      Amended Complaint**

Entwined with Plaintiff's opposition to the defendants' motions to dismiss is a motion for leave to file an amended complaint in which Plaintiff proposes to explicitly state certain facts he believes were reasonably inferred from his initial complaint. Specifically, Plaintiff takes issue with arguments that he has not adequately articulated a failure to train claim. He says a failure to train can reasonably be inferred from the fact that, as previously determined by the SJC, the officers involved in the stop behaved in a way that was inconsistent with clearly established law and a plausible reason for their behavior is that they did not know their actions were unconstitutional because they had not been adequately trained. Plaintiff goes on to assert that a failure to train officers to understand the constitutional requirements related to traffic stops, a routine part of any officer's job, implicates deliberate indifference to ensuring compliance with those constitutional requirements. He requests permission to explicitly state his theory, if necessary, in an amended complaint. Additionally, he asks permission to amend if it is necessary for him to more clearly state that he is asserting failure to train

5

claims against the supervisory officers he has named, specifically Buell, Gilpin, and Habel of the Massachusetts State Police and Chief Wynn of the Pittsfield Police Department.

V. Discussion

**A.     Motion to Amend**

Plaintiff filed a motion for extension of time to file his opposition and motion for leave to amend within twenty-one days of the filing of the first motion to dismiss and filed his motion for leave to amend within the expanded time allowed by Magistrate Judge Robertson. (Dkt. Nos. 42, 43, and 44.) Under, Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff could have simply filed an amended complaint as a matter of course. Instead, he sought leave of this court to file an amended complaint in the event the court determined Plaintiff's complaint failed "to articulate a failure to train claim." (Dkt. No. 44, Pl.'s Opp., 18.) After reviewing the scope of Plaintiff's proposed amendments, the court concludes the proposed amendment is unnecessary because it would only repeat and clarify factual allegations sufficiently pleaded in the original complaint. However, as Plaintiff was free to file an amendment without leave of the court, Plaintiff is permitted, should he so desire, to file an amended complaint within twenty-one days of this order. Plaintiff's amended complaint must contain only language included in (1) the original complaint (Dkt. No. 1) or (2) in his opposition and motion for leave to file an amended complaint (Dkt. No. 44). Any new language may be stricken upon a defendant's motion. As the amendment will not add additional facts, the court will not further delay consideration of the defendants' motions to dismiss.

**B.     Motions to Dismiss**

    1.     <u>State Defendants</u>

Three state troopers with titles identifying them as having supervisory responsibility, Buell, Gilpin, and Habel; the Massachusetts State Police; and the Commonwealth of Massachusetts have

6

moved for dismissal. Plaintiff asserts claims against Buell, Gilpin and Habel in their individual capacities as well as their official capacities, Buell as Station Commander, Gilpin as Superintendent of the Massachusetts State Police, and Habel as a Troop Commander. With respect to the claims asserted against Buell, Gilpin, and Habel in their official capacities, the Massachusetts State Police and the Commonwealth of Massachusetts, well-established case law provides that "the Eleventh Amendment bars federal suits by citizens against the state or state agencies." *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000). This bar extends to the claims made against Buell, Gilpin, and Habel in their official capacities because Plaintiff seeks only damages, not injunctive relief, and "[a] damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official in an agent." *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002). Dismissal is, therefore, appropriate with respect to all of Plaintiff's claims against these entities and individuals in their official capacities.

Plaintiff has also asserted both federal claims pursuant to 42 U.S.C. § 1983 and state law tort claims against Buell, Gilpin, and Habel in their individual capacities. "Section 1983 provides a private right of action against '[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].'" *Bellville v. Town of Northboro*, 375 F.3d 25, 29 n. 3 (1st Cir. 2004) (quoting 42 U.S.C. § 1983) (alteration in original). "[A] a supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). Instead, a supervisor's liability must be premised on their own acts or omissions, and "the supervisor's conduct must evince 'reckless or callous indifference to the constitutional rights of others;" negligence is not enough. *Id.* (quoting *Febus-Rodríguz v. Betancourt-Lebrón*, 14 F.3d 87, 92 (1st Cir. 1994)). To succeed on a § 1983

claim against a supervisor, a plaintiff ultimately must establish (1) "that one of the supervisor's subordinates abridged the plaintiff's constitutional rights" and (2) "that the [supervisor's] action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (alterations in original) (internal quotations omitted).

Plaintiff's § 1983 claims against Buell, Gilpin, and Habel are based on an alleged failure to train, despite an established practice of pretextual traffic stops that result in unconstitutional searches. Or couched, in the language of § 1983 case law, Plaintiff alleges Buell, Gilpin, and Habel were deliberately indifferent to the need to train state troopers to avoid conducting unconstitutional searches following lawful traffic stops. To establish deliberate indifference a plaintiff must show "(1) 'that the officials had knowledge of facts,' from which (2) 'the official[s] can draw the inference' (3) 'that a substantial risk of serious harm exists.'" *Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 20 (1st Cir. 2014) (alteration in original) (quoting *Ruiz–Rosa v. Rullán*, 485 F.3d 150, 157 (1st Cir. 2007)). Additionally, the plaintiff must show a solid causal link between the constitutional violation and the supervisor's conduct. *Guadalupe-Baez*, 819 F.3d at 515.

To be sure, this will be a difficult standard to meet. *Id.* However, whether Plaintiff will be able to "prove what he has alleged is not the issue" at this stage. *Haley v. City of Boston*, 657 F.3d 39, 52 (1st Cir. 2011). Instead, the question is whether he has alleged facts that paint a "plausible picture" and if proven would support a finding of individual liability. *Id.* With the assistance of the SJC's opinion, Plaintiff has sufficiently alleged that two Massachusetts State Troopers violated clearly established constitutional law when they detained him longer than was necessary to complete the investigation of civil traffic violations. He has alleged that the troopers' conduct was consistent with a policy implemented by the Massachusetts State Police and Pittsfield Police Department, an allegation that is plausible given the involvement in this one stop of two different state troopers and

8

a police officer from Pittsfield. The court, therefore, concludes that though "couched in general terms, [Plaintiff's § 1983] allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery." *Id.* at 53.

With respect to the state tort claims asserted against Buell, Gilpin, and Habel in their individual capacities, it is well established that, under Massachusetts law, public employees are shielded from personal liability for conduct that is either negligent or grossly negligent, if they were acting within the scope of their office or employment. MASS. GEN. L. c. 258, §§ 2 and 10(c); *see also McNamara v. Honeyman*, 546 N.E.2d 139, 141-42 (Mass. 1989) (ruling MASS. GEN. L. c. 258 "extends immunity from personal liability to public employees who are acting within the scope of their duties" with respect to both ordinary and gross negligence). Plaintiff has not alleged Buell, Gilpin, or Habel was present during the traffic stop giving rise to this case or undertook any intentional conduct related to the alleged torts. The most generous reading of Plaintiff's claim is that Buell, Gilpin, and Habel are liable for the alleged torts because they were negligent in training the troopers involved in the traffic stop. Dismissal of the state tort claims is appropriate because under Massachusetts law, they are immune from personal liability based on such allegations. *See Clancy v. McCabe*, 805 N.E.2d 484, 490 (Mass. 2004) (describing deliberate indifference within the context of a § 1983 claim as within the spectrum of gross negligence).

  2. Municipal Defendants

Plaintiff has also asserted claims against the Pittsfield Police Department ("PPD"), the City of Pittsfield ("City"), and two employees of the PPD, Chief Wynn ("Wynn") in his supervisory role and Haecker for his conduct as the Pittsfield officer who responded to the traffic stop. They have all moved for dismissal, and the claims against each entity or individual are considered below. As an initial matter, the court considers the argument, asserted by all the municipal defendants, that Plaintiff has not alleged any action by a municipal actor that deprived him of his constitutional rights

and resulted in harm to Plaintiff. Referring back to the SJC's *Cordero* opinion, the municipal defendants assert the only constitutional violation identified by the SJC was Pack's decision not to allow Plaintiff to resume his journey once the tasks related to the routine traffic stop were completed. As that decision was made before Haecker, whose name does not appear in *Cordero*, arrived on the scene, the municipal defendants assert Haecker was not involved in the deprivation of Plaintiff's constitutional rights identified by the SJC.

However, once he arrived on the scene, Haecker repeatedly asked Plaintiff, who was then sitting, handcuffed, in the back seat of a state trooper's cruiser, for permission to search Plaintiff's vehicle and may have assisted with the ensuing search. Plaintiff's complaint supplements the facts set out in *Cordero* in an important respect – he disputes that he ever consented to the search. He thus has alleged not only that the Pittsfield officer was present after the stop became unconstitutional, but also that he played a role in searching Plaintiff's vehicle without properly obtaining Plaintiff's consent. The allegations about that conduct are credited at this stage of the litigation. That conduct, taken as true at this point, would have constituted a further violation of Plaintiff's constitutional rights and the harm experienced by Plaintiff was largely a result of the search. The court, therefore, concludes Plaintiff has adequately pleaded that Haecker's conduct deprived him of constitutional rights and caused him harm.

      a.     Pittsfield Police

Although Plaintiff has named the PPD as a defendant, the PPD is "not a suable entity." *Dwan v. City of Boston*, 329 F.3d 275, n.1 (1st Cir. 2003) (recognizing the substitution of the City of Boston as the proper defendant where plaintiff brought his suit against the Boston Police Department, rather than the City of Boston). Dismissal is appropriate as to all claims separately asserted against the PPD.

b. The City

A municipality cannot be held liable under § 1983 "for the actions of their non-policymaking employees," but "only for their own unconstitutional acts." *Haley*, 657 F.3d at 51. "Thus, a plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, 'through its *deliberate* conduct, the municipality was the moving "force behind" the injury alleged.'" *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). This requires a plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Ultimately, "[a]ssessing liability against the City requires two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the City be responsible for that violation, an element which has its own components." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25–26 (1st Cir. 2005). The SJC's opinion provides an adequate basis for the first element, so the court turns its attention to the components of the second element.

In order to establish the responsibility of the City for the violation, "[t]he alleged municipal action at issue must constitute a 'policy or custom' attributable to the City." *Id.* at 26. Additionally, it is required that "the municipal policy or custom actually have caused the plaintiff's injury" and the "municipality possessed the requisite level of fault," which in cases alleging deficient training and supervision, "is generally labeled . . . as 'deliberate indifference.'" *Id.* As discussed above with respect to the claims against Buell, Gilpin, and Habel, Plaintiff has alleged that the coordinated actions of two state troopers and a Pittsfield police officer which violated his constitutional rights are evidence of the existence of a policy to use routine traffic stops to monitor other criminal activities. In turn, the existence of the policy meant that in the absence of adequate training, officers who attempted to follow the policy were likely to harm members of the public by subjecting them to unconstitutional searches or seizures.

11

The City argues the facts alleged by Plaintiff are insufficient to make his ultimate claim plausible because the allegation that such a policy exists is based only on one stop. It is true that beyond the facts of his own case, he has not alleged facts that support his theory. However, the material he would need to better support his theory would be difficult, if not impossible, for him to obtain, "is likely to be within the defendant[s'] control," and modest discovery could supply Plaintiff with the information he needs to prove his claim. *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016). In deciding whether a Plaintiff has pleaded a claim plausible on face, the court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, the SJC has already determined that two state troopers and a Pittsfield officer were together involved in a stop and search that violated clearly established constitutional law. Given the strength of his allegations concerning the involvement of Haecker and the defendants' possession of the information he would need to prove his theory as to the cause of officer's conduct, the court finds Plaintiff's allegations for his § 1983 claim are sufficient to survive the City's motion to dismiss.

As to Plaintiff's tort claims against the City, dismissal is appropriate. Pursuant to the Massachusetts Tort Claims Act ("MTCA"), public employers cannot be held liable for the intentional torts of their employees. *See* MASS. GEN. LAWS ch. 258, §§ 2, 10(c). Dismissal is, therefore, appropriate as to Plaintiff's claims arising out of the intentional torts of false imprisonment, battery, and trespass to chattel (to the extent based on intentional conduct). *Barrows v. Wareham Fire Dist.*, 976 N.E.2d 830, 835 (Mass. App. Ct. 2012) ("The Act expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee."). On the other hand, when a claim is based on the negligent or wrongful conduct of a public employee who acted within the scope of their employment, the MTCA allows claims only against the public employer, not the employee. MASS. GEN. LAWS ch. 258, § 2. However, "one who wishes to assert a negligence claim against a

12

municipality must 'present[] his claim in writing to the [defendant] within two years after the date upon which the cause of action arose.'" *Haley*, 657 F.3d at 53-54 (alteration in original) (quoting Mass. Gen. Laws ch. 258, § 4). This requirement is substantive, rather than procedural, and applies to actions brought in federal courts. *See id.* The events giving rise to Plaintiff's claims occurred on February 19, 2015, he therefore was required to make presentment by February 19, 2017. As he has not alleged that such presentment was made, dismissal of his negligence-based tort claims against the City is warranted.

        c.        Individual Defendants

Plaintiff has also asserted § 1983 and tort claims against Haecker and Wynn in their official and individual capacities. As with the official capacity claims against Buell, Gilpin, and Habel, dismissal is appropriate with respect to the official capacity claims asserted against Haecker and Wynn because Plaintiff seeks only monetary damages and such claims are essentially claims against the City as their employer. *Burrell*, 307 F.3d at 7. Dismissal is also appropriate as to the state tort claims asserted against Wynn in his individual capacity, again applying the same analysis applicable to Buell, Gilpin, and Habel. Wynn was not present at the stop, and the only basis for the claims against Wynn is his allegedly negligent training of Haecker. As a public employee Wynn is shielded under Massachusetts law from personal liability for negligent and grossly negligent conduct, including deliberate indifference, while acting within the scope of his office or employment. *Clancy*, 805 N.E.2d at 490; *McNamara*, 546 N.E.2d at 141-42.

Unlike the other defendants who have moved for dismissal, Haecker was present for the events giving rise to this action. Though Massachusetts law protects him from personal liability arising from his negligence while acting within the scope of his employment, he remains personally liable for intentional torts, such as false imprisonment, battery, and trespass to chattel. Plaintiff's complaint, however, fails to allege that Haecker personally undertook actions that would constitute

13

false imprisonment, battery, or trespass to chattel. In the absence of such allegations, those claims must also be dismissed.

The same analysis that led this court to deny the motion dismiss the § 1983 claims asserted against Buell, Gilpin, and Habel in their individual capacities, also sustains the parallel claims against Wynn and Haecker. Plaintiff has established that Haecker was a participant in an unconstitutional seizure of Plaintiff and has alleged he was also involved in an unconstitutional search of Plaintiff, both of which violated clearly established law regarding the rights of individuals stopped for civil traffic violations. He has alleged Haecker's actions were consistent with a policy of using routine traffic stops to further other law enforcement activities, thereby making a threshold showing that Wynn had knowledge the officers he supervised where acting in a manner that made it likely they would violate the constitutional rights of individuals stopped for routine traffic violations. *See Guadalupe-Baez*, 819 F.3d at 515; *Ramírez-Lluveras*, 759 F.3d at 20. At this stage, Plaintiff need only allege facts sufficient to make his claims plausible, which he has done. *Guadalupe-Baez*, 819 F.3d at 515. Only later will he need to take on the more difficult task of assembling evidence that meets the standard. *Id.* at 515-17.

Finally, the court finds neither Haecker nor Wynn is entitled to qualified immunity on these claims.[2] "A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman,* 135 S. Ct. 348, 350 (2014) (per curiam). Though the sweep of qualified immunity is broad, it does not protect "those officials who, 'from an objective standpoint, should have known that their conduct was unlawful.'" *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017) (quoting *MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014)). In assessing, at the motion to dismiss stage, whether qualified immunity protects individual government actors, the court must

---

[2] The court did not previously discuss qualified immunity as neither Buell, Gilpin, nor Habel argued for its application in their motions to dismiss.

accept as true the plaintiff's factual allegations. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).

An official is protected by qualified immunity if the plaintiff (1) established a violation of a constitutional right and (2) at the time of the alleged violation the law regarding that violation was clearly established. *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015). The court finds the first prong is satisfied by the SJC's ruling, and turns to the second prong, which itself has two sub-parts. The first sub-part requires the plaintiff to "identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." *Alfano*, 847 F.3d at 75 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The second sub-part requires an assessment of "whether the official's conduct was unreasonable, given the state of the law when he acted." *Alfano*, 847 F.3d at 75 (internal citations omitted); *see also City and Cnty. of San Francisco, Cal. v. Sheehan,* 135 S. Ct. 1765, 1774 (2015).

The SJC's analysis detailed the well-established law regarding routine traffic stops and the requirement that a routine traffic stop "last no longer than 'reasonably necessary to effectuate the purpose of the stop.'" *Cordero*, 74 N.E.3d at 1288 (quoting *Commonwealth v. Cruz*, 945 N.E.2d 899 (Mass. 2011)). Based on the cases cited in *Cordero*, the court concludes a reasonable officer would have known both that Plaintiff's rights were being violated during the period when Haecker was participating in the extended traffic stop and that a policy which encouraged officers to use routine traffic stops to investigate criminal conduct was likely to lead to constitutional violations. Qualified immunity thus does not protect Haecker and Wynn at this preliminary stage when the court must credit the alleged facts. *Maldonado*, 568 F.3d at 268.

## VI. CONCLUSION

For the foregoing reasons, the court takes the following actions. The court DENIES as moot Plaintiff's Motion to Amend incorporated into his opposition to the various motions to dismiss (Dkt. No. 44). The Motion to Dismiss filed on behalf of Gilpin and Habel, the Massachusetts State Police, and the Commonwealth of Massachusetts (Dkt. No. 37) is ALLOWED as to (1) all claims against the Massachusetts State Police and the Commonwealth, (2) the claims against Gilpin and Habel in their official capacities, and (3) the tort claims against Gilpin and Habel in their individual capacities; and is DENIED as to the § 1983 claims asserted against Gilpin and Habel in their individual capacities. The Motion to Dismiss filed on behalf of Buell (Dkt. No. 39) is ALLOWED as to (1) the claims against Buell in his official capacities and (2) the tort claims against him in his individual capacity; and is DENIED as to the § 1983 claims asserted against him in his individual capacity. The Motion to Dismiss filed on behalf of Haecker, Wynn, the PPD, and the City (Dkt. No. 24) is ALLOWED as to (1) all claims against the PPD as a separate entity, (2) the § 1983 claims asserted against Haecker and Wynn in their official capacities, and (3) the tort claims against the City, Haecker, and Wynn; and is DENIED as to the § 1983 claims against the City and Haecker and Wynn in their individual capacities.

It is so Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge